## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATASHA ASHTON and CHRISTOPHER ASHTON, </br></br> Plaintiffs, </br></br> v. </br></br> FETCH, INC., FETCH INSURANCE SERVICES, LLC, THE COLLINA TRUST DATED DECEMBER 2007, 30 PETS INVESTMENT, LLC, VERNON W. HILL, II, and ANDREW B. COHEN, </br></br> Defendants. | Case No. **19  3274** </br></br> FILED </br> JUL 26 2019 </br> KATE BARKMAN, Clerk </br> By_____Dep. Clerk |

## COMPLAINT

1  Plaintiffs, Natasha Ashton and Christopher Ashton (together, "Plaintiffs" or "the Ashtons"), by and through their undersigned attorney, Complaint against Defendants Fetch, Inc ("Fetch"), Fetch Insurance Services, LLC ("Fetch LLC"), The Collina Trust dated December 2007 (the "Collina Trust" or "Collina"), 30 Pets Investment, LLC ("30 Pets"), Vernon W. Hill, II ("Hill") and Andrew B. Cohen ("Cohen").

## PARTIES

2  Natasha Ashton is an adult woman residing at 10 Hickory Lane, Malvern, PA 19355

3.  Christopher Ashton is an adult man residing at 10 Hickory Lane, Malvern, PA 19355.

4  Christopher and Natasha Ashton are husband and wife.

5.  Defendant Fetch is a corporation organized and existing under the laws of the State of Delaware, with its executive offices in Pennsylvania located at 3805 West Chester Pike,

Suite 240, Newtown Square, PA 19073. Fetch and its subsidiaries develop, administer, and operate pet insurance policies under the licensed brand name Petplan Pet Insurance. Fetch is engaged in interstate commerce and employed 20 or more employees for each working day during each of 20 or more calendar workweeks in 2016, 2017 and 2018.

6. Defendant Fetch LLC is a Delaware limited liability company and a wholly owned subsidiary of Fetch, with its executive offices in Pennsylvania located at 3805 West Chester Pike, Suite 240, Newtown Square, PA 19073. Pursuant to a Program Administrator Agreement, Fetch LLC develops, sells, collects, and administers Fetch's Petplan policies, which XL Specialty underwrites In exchange for these services, Fetch LLC receives a commission from XL Specialty.

7 Defendant Collina is a trust and investment vehicle controlled by Vernon W Hill II that maintains an address c/o U.S. Trust Company of Delaware, DE5-002-04-12, 1100 N King Street, Wilmington, DE 19884. On information and belief, Collina is a Delaware trust. Collina holds approximately 38.4% of Fetch's outstanding Class A common stock, or approximately 29% of Fetch's total equity. Collina's Board designee is Defendant Vernon W. Hill, II, who serves as Fetch's Board Chairman

8. Defendant 30 Pets is a Delaware limited liability company controlled by hedge fund billionaire Steven Cohen through his venture capital umbrella, Cohen Private Ventures and/or CPV Holdings, LLC 30 Pets maintains an address c/o Cohen Privatre Ventures, LLC, 72 Cummings Point Road, Stamford, CT 06902. 30 Pets holds all of Fetch's outstanding Class B common stock and holds approximately 24 3% of Fetch's total equity. 30 Pets' Board designee is Defendant Andrew B. Cohen, CPV's Chief Investment Officer. Both Steven Cohen and Andrew Cohen have close business relationships with Mr. Hill. Steven Cohen is the largest

2

stockholder in Mr. Hill's company Metro Bank, PLC, and Andrew Cohen serves on its Advisory Board. Andrew Cohen also serves with Mr Hill on the board of directors of Republic Bank 30 Pets is a party to the Shareholders' Agreement.

9. Defendant Vernon W. Hill, II, is an adult individual with an address at 17000 Horizon Way, Mount Laurel, NJ 08054. Mr. Hill has been the Chairman of Fetch's Board of Directors.

10. Defendant Andrew B. Cohen is an adult individual with an address at One Southampton Row, London, WC1B 5HA

## BACKGROUND

11. After obtaining their undergraduate degrees from Oxford University, the Ashtons attended the Wharton School of Business of the University of Pennsylvania.

12. In 2001, while attending Wharton, their cat fell ill, leading to veterinary care costs that were extremely expensive for two graduate school students.

13 This experience caused the Ashtons to realize that pet insurance -popular in the Ashtons' native United Kingdom—was virtually unavailable in the United States. The Ashtons developed an idea to fill the market gap. They created a business plan, submitted it to the 2003 annual Wharton Business Plan Competition, and won. A few months later, the Ashtons founded Fetch

14. Over the course of several years, the Ashtons built Fetch into an operational business. In October 2003, they secured an exclusive license to use the "Petplan" brand name-- the largest in the world---in the United States They successfully negotiated for access to Petplan's extensive data, actuarial determinations, and operational and marketing know-how Using that data, they developed a comprehensive set of proprietary pricing models and policies

3

for pet owners. In 2005, the Ashtons secured an underwriter to guarantee their policies. Local companies soon agreed to offer Petplan policies as an employee benefit. The work paid off: in July 2006, Fetch sold its first Petplan policy A year later, Fetch was seeing double-digit month-over-month growth.

15. Up to this point, the Ashtons had raised funding largely from non-traditional sources They personally invested over $100,000 of seed capital and used credit cards to pay for additional expenses Their only external funding came from friends and family. But with Petplan taking off, the Ashtons sought additional capital to help scale the company

16. The Ashtons' first major investments came from Dutch banker Godfried van Lanschot and his brother, Christiaen van Lanschot. Over two years, the van Lanschots purchased a total of 486,670 shares of Class A common stock at an average price of $3 77 per share—for a total investment of $1,833,333.

17. Next, the Ashtons negotiated an investment by Defendant Vernon W. Hill II. In April 2008, Mr. Hill purchased 475,058 shares through his Collina investment vehicle for $2 million, or $4.21 per share. Fetch appointed Mr. Hill to serve as Chairman of the Board In addition, Fetch and Mr. Hill entered into a consulting agreement, pursuant to which Fetch issued Mr Hill warrants to purchase 278,264 additional shares for $4.21 and agreed to pay him a yearly consulting fee that in 2018 reached $720,000. Concurrent with Mr. Hill's investment, Mr. van Lanschot increased his holdings, purchasing an additional 95,012 shares

18 With the Investors' backing and the Ashtons as co-CEOs, Fetch grew quickly. In 2009, Fetch turned a profit. In 2010, its total revenue reached $17 million Total revenue continued to rise at rates north of $10 million per year thereafter

4

19. Under the Ashtons' management, Fetch focused on customer service by opening a 24/7 contact center and ensuring that Fetch's employees prioritized fast claims processing. Each year, independent website Pet Insurance Review rated Fetch over 9/10 for customer satisfaction.

20. Fetch has been a tremendous success. In 2011, Fetch became the first pet insurance provider named to *Inc.* magazine's 500 fastest-growing companies in the United States, placing at number 123. In 2013, Ernst & Young named the Ashtons their Greater Philadelphia Retail & Consumer Products entrepreneur of the year. In 2015, Fetch made *Forbes'* list of America's most promising companies. And in October 2016, *Entrepreneur* magazine named Fetch one of the "Best Entrepreneurial Companies in America." That year, Fetch's total yearly program revenue had reached $86 million—an increase of more than 400% since 2010. In October 2017, Natasha Ashton was featured on the front cover of the Main Line Today Magazine celebrating Power Women of the Main Line.

21. In sum, Natasha and Christopher Ashton have grown Fetch into one of North America's leading pet insurance companies, with yearly gross revenue of over $100 million, a client base that continues to expand, and one of the highest customer satisfaction rates in the industry.

## NATURE OF DISCRIMINATION CLAIMS

22. On April 10, 2008, the Ashtons each entered into Employment Agreements with Fetch for them to serve as Co-President and Co-Chief Executive Officer with the other.

23. On April 15, 2015, the Ashtons each entered into amendments to their Employment Agreements. In the First Amendment to Employment Agreement, among other things, each of the Ashtons received increases in their base salaries from $120,000.00 to

5

$375,000.00. Their positions as Co-Presidents and Co-Chief Executive Officers as set forth in their original Employment Agreements remained unchanged

24. On November 21, 2017, the Ashtons met Fetch Board Member and Investor, Christiaen van Lanschot, for lunch in London. At the time, Natasha was six (6) months pregnant.

25. Natasha being visibly pregnant, Mr van Lanschot told the Ashtons that they had to tell Messrs Hill and Cohen that Natasha was pregnant before the upcoming Board meeting scheduled for December 19, 2017. Mr. van Lanschot stated to the effect Natasha's pregnancy would, for some unexplained reason, "derail the entire Board meeting in December" if the Board members did not know about it in advance

26 The Ashtons disagreed that there was any need to inform Messrs. Hill and Cohen about Natasha's pregnancy but told Mr. van Lanschot that they would consider it.

27. Shortly after their luncheon with Mr. van Lanschot on November 21, 2017, Mr. van Lanschot again urged the Ashtons to inform the Board of Natasha's pregnancy in a telephone conversation with them

28. The Ashton's were especially concerned with Mr. Hill's likely reaction to Natasha's pregnancy based on their past experience with him. In interacting with him over the years, the Ashtons heard Mr. Hill make blatant and insultingly sexist comments

29. Despite their concerns, the Ashtons complied with Mr. van Lanschot's directive and, on December 2, 2017, Natasha sent an email to Fetch's Directors, including Mr. Hill, informing them that she was pregnant.

30. Promptly thereafter, on January 8, 2018, Mr. Hill invited Christopher Ashton to attend a meeting with Mr. Hill without Natasha At the meeting, Mr Hill stated that he and two

other Board members were not happy with the current management structure and no longer wanted co-CEOs. Mr. Hill stated that Natasha was to me removed as Co-CEO and that only Christopher would remain as CEO.

31. Christopher disagreed and objected to the plan. On the next Board call on January 16, 2018, Natasha asked for clarification on her job status since she was not invited to the meeting on January 8. Mr. Hill stated that "nobody's firing anybody."

32. On March 5, 2018, Natasha gave birth to the Ashtons' son, Henry.

33. At a Board of Directors meeting on April 26, 2018, both Ashtons were removed as Co-CEO's by Fetch's Board of Directors, removed from all operational control over the business, and all employees previously reporting to the Ashtons were told to report to the two new co-CEOs who were installed during that meeting.

34. While, pursuant to the Board's action the Ashtons remained employed as Co-Presidents, the action of removing the Ashtons as Co-CEO's was a breach of both of their Employment Agreements, each of which specified that they were employed not only as Co-Presidents, but also as Co-CEO's.

35. In view of Fetch's breach of their Employment Agreements guaranteeing their status as Co-CEO's, on May 22, 2018, the Ashtons sent letters to Fetch notifying Fetch of its breach of their Employment Agreements and requesting Fetch to cure the breaches within thirty (30) days

36 Unfortunately, Fetch refused to cure the breaches. Accordingly, the Ashtons sent letters to Fetch of their resignation for "Good Reason" pursuant to their Employment Agreements on June 28, 2018, with such resignations to be effective on September 28, 2018.

37. In response, Fetch did not belatedly cure its breach of the Employment Agreements by rescinding the decision to remove the Ashtons as Co-CEO's.

38. Instead, Fetch purported to terminate the Ashtons' employment for "Cause," as "Cause" is defined in the Employment Agreements. Remarkably, the termination was to take effect on exactly the same day the Ashtons' resignation became effective, September 28, 2018.

39. Over a year earlier, on May 31, 2017, Mr. Hill claimed that the Ashtons breached their Employment Agreements by receiving employment bonuses in 2015 and 2016 in without Board review and approval.

40 When Mr. Hill made these charges back in 2017, they were nonsense  The bonuses that the Ashtons received in 2015 and 2016 were from a pool of money established by the Board for the payment of bonuses to all employees. The bonuses received by the Ashtons in 2015 and 2016 were approved by the then-Chief Financial Officer who reported to Fetch's Board of Directors and who had previously been employed by Mr. Hill and appointed as Fetch's CFO at Mr Hill's insistence. The bonuses that the Ashtons received along with all of the other employee bonuses were reported on the Company's financial books that were open and available to all Board members at all times, and subject to year-end financial audits by outside auditors furnished to Fetch's Board of Directors.

41 Indeed, although Mr. Hill accused the Ashtons of being "thieves" for receiving the bonuses, and claimed that the Ashtons had received the bonuses in breach of their Employment Agreements constituting "willful misconduct that is materially injurious to the business of the Company," the Ashtons were not fired or otherwise disciplined.

8

42. In fact, when the Ashtons were removed as Co-CEOs but retained as Co-Presidents in April 2018, neither Mr. Hill nor anyone else claimed that the bonuses that the Ashtons received in 2015 and 2016 had anything to do with that decision.

43. Only after Natasha informed Fetch's Board that she was pregnant did the Board decide to remove Natasha as Co-CEO, and then remove both Ashtons as Co-CEO's in breach of their Employment Agreements, and then assert that the Ashtons were terminated for "Cause" *after* they already sent their letters of resignation for "Good Reason."

## COUNT I

## PREGNANCY DISCRIMINATION BY FETCH

44. The foregoing averments are incorporated by reference as if fully set forth herein.

45 Natasha Ashton was removed as Co-CEO of Fetch because she was pregnant and gave birth to a child.

46. Fetch removed Natasha Ashton as Co-CEO of Fetch in breach of her Employment Agreement because she was pregnant and gave birth to a child.

47. Fetch's discriminatory actions are in violation of the Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act, 42 U.S C. § 2000e, *et seq.* and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

48 Fetch has engaged in intentional discrimination against Natasha Ashton and has done so with malice or with reckless indifference to Ms. Ashton's federally protected rights.

WHEREFORE, Natasha Aston demands the following relief.

(1) backpay including salary and benefits;

(2) reinstatement or front pay in lieu of reinstatement including salary and benefits;

  (3)  compensatory damages for emotional pain and suffering;

  (4)  punitive damages;

  (5)  a permanent injunction enjoining Defendants from discriminating against her;

  (6)  attorney's fees and costs; and

  (7)  such other relief as to which she may be entitled.

## COUNT II

## ASSOCIATIONAL DISCRIMINATION BY FETCH

49 The foregoing averments are incorporated by reference as if fully set forth herein

50 Christopher Ashton was removed as Co-CEO of Fetch because his wife and Co-CEO, Natasha Ashton, was pregnant and gave birth to a child.

51. Fetch removed Christopher Ashton as Co-CEO of Fetch in breach of his Employment Agreement because his wife and Co-CEO was pregnant and gave birth to a child

52. Fetch's discriminatory actions are in violation of the Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

53. Fetch has engaged in intentional discrimination against Christopher Ashton and has done so with malice or with reckless indifference to Mr. Ashton's federally protected rights

WHEREFORE, Christopher Aston demands the following relief:

  (1)  backpay including salary and benefits;

10

 (2) reinstatement or front pay in lieu of reinstatement including salary and benefits;

 (3) compensatory damages for emotional pain and suffering;

 (4) punitive damages;

 (5) a permanent injunction enjoining Defendants from discriminating against him;

 (6) attorney's fees and costs; and

 (7) such other relief as to which he may be entitled.

## COUNT III

### AIDING AND ABETTING DISCRIMINATION BY HILL, COHEN, COLLINA, 30 PETS AND FETCH, LLC

54 The foregoing averments are incorporated by reference as if fully set forth herein.

55. Defendants Hill, Cohen, Collina, 30 Pets and Fetch, LLC aided and abetted Fetch and one another in discriminating against the Ashtons in violation of the PHRA, 43 P.S. § 955(e).

WHEREFORE, the Ashtons demand the following relief.

 (1) backpay including salary and benefits;

 (2) reinstatement or front pay in lieu of reinstatement including salary and benefits;

 (3) compensatory damages for emotional pain and suffering;

11

(2) reinstatement or front pay in lieu of reinstatement including salary and benefits;

(3) compensatory damages for emotional pain and suffering;

(4) punitive damages;

(5) a permanent injunction enjoining Defendants from discriminating against him;

(6) attorney's fees and costs; and

(7) such other relief as to which he may be entitled.

## COUNT III

## AIDING AND ABETTING DISCRIMINATION BY HILL, COHEN, COLLINA, 30 PETS AND FETCH, LLC

54. The foregoing averments are incorporated by reference as if fully set forth herein.

55. Defendants Hill, Cohen, Collina, 30 Pets and Fetch, LLC aided and abetted Fetch and one another in discriminating against the Ashtons in violation of the PHRA, 43 P.S § 955(e)

WHEREFORE, the Ashtons demand the following relief:

(1) backpay including salary and benefits;

(2) reinstatement or front pay in lieu of reinstatement including salary and benefits,

(3) compensatory damages for emotional pain and suffering;

11

(4) a permanent injunction enjoining Defendants from discriminating against them;

(5) attorney's fees and costs; and

(6) such other relief as to which he may be entitled.

Respectfully submitted,

/s/ Edward S. Mazurek
Edward S Mazurek (I.D. No 50278)
THE MAZUREK LAW FIRM, LLC
717 S. Columbus Blvd, Suite 516
Philadelphia, PA 19147

267.243.3393
emazurek@mazureklawfirm.com

Counsel for the Plaintiffs,
Natasha and Christopher Ashton

(4) a permanent injunction enjoining Defendants from discriminating against them;

(5) attorney's fees and costs, and

(6) such other relief as to which he may be entitled.

Respectfully submitted,

/s/ Edward S. Mazurek
Edward S. Mazurek (I.D. No 50278)
THE MAZUREK LAW FIRM, LLC
717 S. Columbus Blvd, Suite 516
Philadelphia, PA 19147

267.243.3393
emazurek@mazureklawfirm.com

Counsel for the Plaintiffs,
Natasha and Christopher Ashton

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
NATASHA & CHRISTOPHER ASHTON

**DEFENDANTS** FETCH, INC., FETCH INS. SERV., LLC, COLLINA TRUST, 30 PETS INVESTMENT, VERNON W. HILL, II, ANDREW R. COHEN

(b) County of Residence of First Listed Plaintiff: DELCO, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: DELCO, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
EDWARD S. MAZUREK, 717 S. COLUMBUS, PHILA, PA 267-243-3393

Attorneys *(If Known)* MICHAEL O'MARA, STRADLEY RONON, 2005 MARKET ST. PHILA PA 215-564-8121

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/Exchange |
| | | | | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☒ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 USC § 2000e ET SEQ

Brief description of cause: PREGNANCY DISCRIMINATION

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 5,000,000+
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):* JUDGE _____ DOCKET NUMBER _____

DATE: 7/26/19
SIGNATURE OF ATTORNEY OF RECORD: Edward S Mazurek (PA ID 50278)

JUL 26 2019

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

19 3274

Address of Plaintiff: NEWTOWN SQUARE, PA

Address of Defendant: 3805 WEST CHESTER PIKE, NEWTOWN SQ, PA

Place of Accident, Incident or Transaction: NEWTOWN SQUARE PA

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 7/26/19   [signature] Attorney-at-Law / Pro Se Plaintiff   Attorney I.D. # (if applicable)

---

**CIVIL:** (Place a √ in one category only)

A. **Federal Question Cases:**
1. Indemnity Contract, Marine Contract, and All Other Contracts
2. FELA
3. Jones Act-Personal Injury
4. Antitrust
5. Patent
6. Labor-Management Relations
7. Civil Rights ☒
8. Habeas Corpus
9. Securities Act(s) Cases
10. Social Security Review Cases
11. All other Federal Question Cases
   *(Please specify)*

B. **Diversity Jurisdiction Cases:**
1. Insurance Contract and Other Contracts
2. Airplane Personal Injury
3. Assault, Defamation
4. Marine Personal Injury
5. Motor Vehicle Personal Injury
6. Other Personal Injury *(Please specify)*
7. Products Liability
8. Products Liability - Asbestos
9. All other Diversity Cases
   *(Please specify):*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, EDWARD S MAZUREK, counsel of record or pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs

☒ Relief other than monetary damages is sought.

JUL 26 2019

DATE: 7/26/19   [signature] Attorney-at-Law / Pro Se Plaintiff   50278 Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38

Civ. 609 (5/2018)



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

ASHTON, ET AL : CIVIL ACTION
v. :
FETCH, INC., ET AL : NO. 19 3274

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)

(f) Standard Management – Cases that do not fall into any one of the other tracks.

7/26/19  EDWARDS MAZUREK  PLAINTIFFS
**Date**  **Attorney-at-law**  **Attorney for**

267-242-3393  EMAZUREK@MAZUREKLAWFIRM.COM
**Telephone**  **FAX Number**  **E-Mail Address**

(Civ. 660) 10/02

JUL 26 2019